# Ex Parte GREENE and GRAHAM.

[APPLICATION FOR PROHIBITION TO RESTRAIN INJUNCTION SUIT.]

1. *In what cases prohibition lies.*—Although a bill in chancery may be fatally defective in necessary averments, may abound in imperfections, and may be filed in a district in which the defendants are not liable to be sued; yet these are mere matters of defense, and cannot be reached by prohibition, which only lies where the court has assumed to act upon a matter which could not be determined by it, or upon the rights of a party against whom it could not proceed.

2. *Does not lie to chancellor until he has acted.*—A prohibition does not lie to the chancellor, to restrain proceedings in an injunction suit, when it is not shown that he has done any act, or made any order in the premises, showing that he does or will entertain the cause; the injunction having been granted by the judge of the city court of Mobile.

3. *Judge of city court of Mobile may grant injunction.*—Under the statute defining the jurisdiction of the city court of Mobile, (Session Acts 1851-2, p.    ) construed in connection with the constitutional powers of the circuit judges, the judge of that court has power to grant writs of injunction, to be operative in that county.

4. *Construction of reference clause in statute.*—A clause of reference in a statute embraces only the general powers and provisions of the statute referred to, and not its special and particular clauses; but this principle cannot be so applied in the construction of the statute defining the jurisdiction of the city court of Mobile, as to deprive the judge of that court of the power to grant injunctions, which is one of the general powers conferred by the constitution on the circuit judges.

5. *Limitation and operation of injunction granted by city judge.*—The judge of the city court of Mobile can only grant an injunction, to be operative in that county; but it is no objection to an injunction granted by him, in a cause pending in the chancery court at Mobile, that some of the defendants reside in another county.

6. *Whether the State may be sued in chancery.*—The State constitution (Art. VI, § 9) having provided, that " the general assembly shall direct by law in what manner, and in what courts, suits may be brought against the State ;" and the legislature having directed (Code, § 2138) that suits may be brought against the State " in the circuit court," the State cannot be sued in the chancery court.—(*Per* STONE, J.; RICE, C. J., and WALKER, J., expressing no opinion.)

IN this case, Wm. J. Greene, the comptroller of public accounts, and William Graham, the State treasurer, made application, in behalf of the State, for a, writ of prohibition from this court, to restrain further proceedings in a certain suit

instituted in the chancery court at Mobile, by the Mobile and Ohio Railroad Company as complainants, against the relators, the State of Alabama, and the governor of the State. The bill was filed by the railroad company, to enjoin the sale of certain notes and bonds, which had been previously conveyed by said company, by deed of trust, to said Greene and Graham as trustees, to secure the re-payment of a loan of $400,000 made by the State to said company ; and which said trustees were proceeding to sell, pursuant to the terms of the deed. The fiat for the injunction was awarded by the Hon. Alex. McKinstry, the judge of the city court of Mobile. The grounds of the application are, that the injunction was issued without authority, and that the State cannot be sued in the chancery court.

JNO. A. ELMORE, with whom was M. A. BALDWIN, Attorney-General, for the motion.—1. The State cannot be sued, without her consent.—7 Cranch, 116 ; 1 Dallas, 77 ; 1 Texas, 764. In England, the sovereign cannot be sued, until, on petition to that effect, he orders the courts to take cognizance of the cause ; and our ideas of the law are derived from that country. Our constitution (Art. VI, § 9) forbids the State being sued, except in the manner and courts " the general assembly shall direct by law." Before the adoption of this instrument, a State could be sued by any person, in any court, without her consent ; or she could not be sued at all, unless by her consent. If the first proposition be true, then the settled rule of construction would require that this clause should operate as a restraining instrument ; and the specifications of the statute (Code, § 2138) would be an exclusion of the right to sue in any other manner, or in any other court. Any other construction of the statute would make this constitutional provision without meaning and a nullity. But if the other proposition be true, this clause is an enabling one, permitting suits in such manner and in such courts only as the legislature should direct ; and thus both arguments lead to the same conclusion.

2. This suit is, in fact, against the State alone. No other person has an interest in it. The other defendants are made parties only in their official capacity, and as agents of the

State. To permit a suit against the officers of the State, in relation to a matter in which the State alone is interested, and to obtain orders and decrees against the State through her officers, while it cannot be done directly against her as a party, would be to allow that to be done indirectly which cannot be done directly. A State acts through her officers, and in no other manner ; and a suit against them, touching a matter in which she alone is interested, is a suit against her.— 1 Texas, 764.

3. This objection to the jurisdiction cannot be made by plea in the chancery court. As the chancery court has general jurisdiction in cases of equitable cognizance, a plea to the jurisdiction must show what other court has jurisdiction. 1 Chitty's Pleadings, 445–6. Such a plea would be, in its nature and effect, a plea in bar ; and a plea in bar would be a submission to the jurisdiction.—Nabob of Arcot v. East India Co., 3 Vesey, 378.

4. There being, then, no other adequate remedy, a prohibition lies from this court.—*Ex parte* Simonton, 9 Porter, 383 ; The State v. Porter, 1 Ala. 688 ; *Ex parte* Smith, 23 Ala. 94.

5. The judge of the city court of Mobile has no power to grant writs of injunction. The act of 1852, under which the power is claimed, does not confer it. The powers conferred by that act are limited by the matter preceding. A clause of reference in a statute extends only to the general provisions of the statute referred to, and not to every particular clause of it.—Dwarris on Statutes, m. p. 705. As the powers conferred on the judge of the city court are of a general nature, and given generally by reference to the powers of the circuit judges, no construction can properly be given to enable him to exercise the special and extraordinary powers conferred upon them. A new jurisdiction cannot be given by implication, unless it be a necessary implication. The powers given to the judge are conferred by the same section that gives a new jurisdiction to the court, and are necessarily to be referred and confined to those new matters of jurisdiction. To extend the jurisdiction of the judge, by implication, so as to embrace all the special and extraordinary powers of the circuit judges, would enable him to preside in the circuit court of Mobile, on the failure of the circuit judge to attend ;

to call special terms of the circuit court of Mobile ; or to preside as a special judge of the supreme court if it were held in Mobile. The same construction would give the clerk of the city court power to issue original attachments ; yet this court has decided that he has no such power.—Stephenson v. O'Hara, 27 Ala. 362.

6. But if this power is given to the judge of the city court, it is certainly limited in its exercise to the county of Mobile : he can make no order which is to operate on parties out of that county, or as to acts to be done out of that county. The injunction is granted against the State, against the governor, the comptroller, and the treasurer ; and these officers, in contemplation of law, reside at the seat of government, and are required to have their offices there. The act forbidden to be done was, by the terms of the deed, to be done in Montgomery ; and the parties, when arrested by the injunction, were proceeding to execute their duty under the deed in Montgomery.

R. H. SMITH and DANIEL CHANDLER, contra.—1. The constitutional provision, authorizing suits against the State, is to be liberally construed.—The State v. Curran, 7 English, 321. Since a remedy against the State is given, it ought to be effectual ; and to confine the remedy to suits in the circuit court, when that court has no jurisdiction of the subject-matter, would be a mockery of justice. The constitution vested chancery jurisdiction, until the establishment of separate chancery courts, in the circuit judges ; but the chancery court was then as distinct, in law, from the circuit court, as it now is, though it was presided over by a circuit judge. The act of 1827 (Clay's Digest, 329, §§ 143–4) only authorized the State to be sued in the circuit courts, but at the same time it made provisions for subpœnas in chancery ; thus showing that the legislature supposed the right to sue at law involved the right to sue in chancery. But if section 2138 of the Code must be confined in its operation to the circuit court, it is because section 602, defining the jurisdiction of chancery, was intended to make provision for all cases of equitable cognizance ; and its language is broad and general enough to give a suit against the State.

2. But, even if the State cannot be sued in equity, she is here represented by trustees who may be sued.—Osborne v. U. S. Bank, 9 Wheat. 738. At all times, both in England and in the United States, it has been within the jurisdiction of equity to act on the rights of the State, even when she is not represented by trustees ; and it is customary, in such cases, to make the attorney-general a party.—Story's Eq. Pl. § 222 ; Cooper's Eq. Pl. 17, 12 ; Mitford, 22, note b ; 1 Barb. Ch. R. 163 ; also, Code, § 20.

3. Again, if the State is exempt from a suit in chancery, that is a matter of defense to be set up in the primary court. The objection might be taken by demurrer, by plea, or by motion to dissolve the injunction ; and an appeal would lie in either case to this court. The case being one of general equitable cognizance, and no necessity being shown for the extraordinary writ of prohibition, it will not be awarded.— 23 Ala. 94 ; 7 Wend. 518 ; 8 Missouri, 252 ; 10 Rob. (La.) R. 169 ; 9 Sm. & Mar. 623 ; 3 How. (U. S.) 292 ; 13 U. S. Digest, 547.

4. As to the power of the city judge to grant a prohibition : The powers given by statute to a judge are altogether distinct from and independent of the jurisdiction of the court over which he presides ; and indeed, in some cases, as the power to take acknowledgments of deeds, have no connection whatever with the court. Keeping this principle in view, the construction of the act of 1852, "to define the jurisdiction of the city court," is clear. That act first confers on the city court the powers and jurisdiction of the circuit court, and then provides, that " the judge shall have the same powers, and perform the same duties, in Mobile county, as the judges of the circuit courts now have, or may hereafter be invested with." The power to issue injunctions is given to the circuit judges by the constitution, as a part of their general and irrevocable powers ; and the statute expressly makes the powers of the city judge co-extensive with the powers of the circuit judges, with the single restriction that he can only exercise those powers in Mobile county.—Osborne v. U. S. Bank, 9. Wheat. 738 ; U. S. Bank v. The Planters' Bank of Ala., 9 Wheat. 904. In granting the injunction, the judge has nothing to do with the residence of the parties : they are reach-

ed through the process of the court, which is issued by the register, and may run into any county in the State.

STONE, J.—The constitution of the State of Alabama (Art. V, § 2) confers on this court " power to issue writs of injunction, *mandamus, quo warranto, habeas corpus,* and such other remedial and original writs, as may be necessary to give it a general superintendence and control of inferior jurisdictions."

Prohibition is a writ, " directed to the judge and parties of a suit in any inferior court, upon a suggestion, that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court. * * * It also lies against inferior tribunals, when, in handling matters clearly within their cognizance, they transgress the bounds prescribed to them by the laws."—3 Bl. Com. 112.

This court has heretofore construed the clause of the constitution which is copied in the opening of this opinion, and decided, that it confers power "to prohibit the chancery court, where a proper case for the exercise of this power is presented."—*Ex parte* Smith, 23 Ala. 94 ; *Ex parte* Walker, 25 Ala. 81.

This doctrine has been frequently under review, and it is said in some of our sister States, that " the writ of prohibition is an extraordinary one, and should be issued only in cases of necessity, clearly shown, and where the party has applied in vain to the inferior tribunals for relief."—The State v. Com. Ct. N. O., 4 Rob. 48 ; The State v. Judge of the 4th Dis., 10 Rob. 169 ; The People v. S. S. Seward, judge, 7 Wend. 518 ; McMeecher *Ex parte*, 7 Eng. 70. It is said to be in the sound, legal discretion of the court, whether or not the writ will be issued.—Bac. Abr. by Bouvier, vol. 8, pp. 209–10, and authorities cited.

In the cases of Smith and Walker, *supra,* this court, speaking of the writ of prohibition, declared that the power is discretionary, and should never be exercised, except in cases where the inferior court has clearly executed its jurisdiction in the order complained of, and where the relator has no other adequate remedy.

5

We may, then, safely assert, that " prohibition " is an *extraordinary* writ, only to be resorted to when its exercise is *necessary* to give a general *superintendence* and *control* of inferior jurisdictions ; never to be resorted to, except in cases of usurpation or abuse of power, and not then, unless other remedies are ineffectual to meet the exigencies of the case. Some of the adjudged cases go so far as to assert, that the writ will not be issued in any case, until the party who complains of the abuse of power shall have sought redress in the inferior court, and failed to obtain it.—See McMeecher, *Ex parte*, *supra*.

On this question, we prefer, for the present, to remain uncommitted, further than may be inferred from the case of Smith, *supra.*

The relation in this case sets forth, first, that the fiat for injunction was granted by the judge of the city court of Mobile, and that he had no authority to grant such order ; secondly, that the State of Alabama is not liable to be sued in the chancery court. Other objections were urged in argument, but they are not of a character to be considered in this proceeding. Our power under this application is confined to the inquiry, has the inferior tribunal assumed to act upon a matter, or upon the rights of a party, that could not be determined, or proceeded against in that forum? Unless one or the other of these inquiries can be answered affirmatively, our investigations are at an end. The bill may abound in imperfections, may be fatally wanting in necessary averments, or may be instituted in a district in which the defendants were not liable to be sued. These, if they exist, are proper matters of defense, and cannot be reached by this extraordinary process.

2. Another view of this case, we do not feel at liberty to overlook. This this an application for a writ of prohibition to the Hon. Wade Keyes, chancellor of the southern division of Alabama. The relation complains, that Hon. A. McKinstry, judge of the city court of Mobile, made the order, granting the injunction. It does not appear that Chancellor Keyes has made any order in the premises, or done any act, showing that he entertains, or will entertain the cause. For aught that we can know, on a proper application to him, he may

either dissolve, or so modify the injunction, as to leave nothing of which the relators will complain. We are asked to prohibit him from entertaining, or proceeding in a cause, in the absence of any averred fact or circumstance, connecting him *actively* with the proceedings complained of. The motion must be denied on this ground alone.

If it be true that Judge McKinstry has no authority to grant writs of injunction, or that the State cannot be sued in the chancery court, the chancellor should have the opportunity of passing upon those questions, and thus making them his acts, before we can feel at liberty to assume control over him. In other words, he must either act, or manifest an intention to act, before we can be required to control his action.

Here this opinion might close, but we will proceed to pronounce upon the other questions presented above.

3. We do not entertain a doubt that the judge of the city court of Mobile was, and is, authorized to " issue writs of injunction," to be operative in Mobile county. The first section of the act " to define the jurisdiction of the city court of Mobile," approved Feb'y 7, 1852, declares that " the judge of said court shall have the same powers, and perform the same duties, in Mobile county, as the judges of the circuit courts of this State now have, or may hereafter be invested with." This language is very comprehensive, and explicit ; and to enable us to determine the powers of the judge of the city court, we have but to ascertain the " powers" and " duties" which the judges of the circuit courts " have " and " perform. " The constitution of the State of Alabama (Art. V, § 8) confers the power on the " judges of the several circuit courts to issue writs of injunction, returnable into the courts of chancery."

4. It is contended for the relators, that the act of Feb'y 7, 1852, enlarging the powers and jurisdiction of the city court of Mobile and its judge, is but a reference statute, and that such statutes embrace only the general, not the particular powers. We admit the principle in a proper case, but cannot assent to the use sought to be made of it. The power to " issue writs of injunction, returnable into the courts of chancery," is one of the few grants, which the framers of the constitution esteemed of importance sufficiently enduring, to justify its

incorporation into the organic law. This must certainly be regarded as one of the general powers of the judges of the circuit courts.

5. It is urged in this case that, even under this construction, the judge of the city court had no authority to grant the injunction as against the defendants who reside without the limits of Mobile county; his power being confined to that county. The fault of the argument consists in the supposition, that power was executed beyond the limits of Mobile county. The bill was filed in that county, and the judge did nothing more than to grant a fiat, directed to the register of the chancery court of the first district; the court for which district is by law established, and holds its sessions, in said county. This he had power to do, but could grant no such order in any case pending in a court not holden in Mobile county.

6. Whether a State or sovereignty could, at the common law, and without the aid of statute, be sued in its own courts, is a question not free from difficulty. In the Magdalen College case, 6 Rep. 67, the doctrine settled goes very far to show that, when a contest as to mere property rights springs up between the king and a subject, the king is as much under the law as the subject is; and it is said, the same rule prevails, whether he claim the property as king, or in his private capacity. In Curran v. The State of Arkansas, 15. How. S. C. R. 304–309, it is said, that a State, by engaging in a contract, lays down its sovereignty, so far as respects the particular transaction. See, also, an elaborate view of this question, in the same case, 7 Eng. (Ark.) Rep. 321 ; and see the authorities on the briefs of the counsel in that case. State of Miss. v. Johnson, 3 Cush. (Miss.) 625.

On the other hand, the doctrine is asserted in many adjudged cases, that a sovereign State cannot be summoned to the bar of its own tribunals, except as the law may expressly provide.—Delafield v. State of Illinois, 2 Hill's N. Y. 169 ; Garr v. Bright, 1 Barb. Ch. Rep. 157 ; Hosner v. Young, 1 Texas, 764–769; Nathan v. Com. of Va., 1 Dallas, (Penn.) 78.

In the case in 6 Rep. 67, the sovereign was not a party to the proceedings ; and hence that case is not an authority directly on the point, that a suit could have been maintained

against him. So, the case in 15th How. Sup. Ct. rests the jurisdiction on the fact, that the supreme court of Arkansas had decided, that the suit in that case was rightly brought against the State ; the question, as it is there said, being one of local law, depending on the constitution and statutes of the State. So, in most of the cases which assert the doctrine that States or sovereignties cannot be sued, the question either did not arise directly, or arose in relation to some other State than that in whose court the suit was pending. The case of Hosner v. Young, *supra*, carried the doctrine further than any other adjudged case which has fallen under our observation.

In the State v. Curran, the right to sue the State is based on a very liberal construction of the statute of Arkansas.

Under the English chancery system, the practice seems to have prevailed, when the interests of the government were involved in the litigation, of making the attorney-general a party, because he was the proper public officer of the government.—Story's Eq. Pl., § 222 ; Cooper's Eq. Pl. 22 ; Mitf. Eq. Pl. 21–2, and authorities cited. We have found no case in which that government was directly made a party.

The constitution of the State of Alabama (Art. VI, § 9) provides, that " the general assembly shall direct by law, in what manner, and in what courts, suits may be brought against the State." The Code, (§ 2138,) obeying this constitutional injunction, has directed that " a citizen of this State, or domestic corporation, may bring suit against the State of Alabama, in the circuit court of the county in which he resides, or in which such corporation is located ; which must, in all respects, be governed by the same rules as suits between individuals." Section 2139 directs how and by whom the interest of the State is to be represented ; and section 2140, how judgment, if rendered against the State, is to be satisfied.

The legislature having thus complied with the requirements of the constitution, and directed that suits " may be brought against the State in the circuit court," the writer of this opinion is satisfied that we have no power to disregard their direction ; and that a suit brought against the State in any other court, is without authority. To hold otherwise would be to violate, not to obey the law.—Gedney v. Inhabitants of Tewksbury, 3 Mass. 307.

It is argued, that this construction will lead to great incon-
venience, and may result in a denial of justice to this class of
litigants.    This argument may force on us the duty of indulg-
ing all reasonable intendments in furtherance of the remedy
provided, but will not justify a palpable disregard of the
statute.    If a remedy be needed, it must be sought elsewhere.

It is not for us to define, in this proceeding, the extent of
jurisdiction conferred on the circuit courts, over suits against
the State.    Nor can we now decide whether the complainants
below have any, and what redress; or whether, if they have
been wronged and seek redress, the State is a necessary party
to such proceedings.    The entire merits of the controversy,
and the forum for its adjustment, save as herein decided,
must be left open for consideration, when they shall be prop-
erly brought before us.

For the reasons above set forth, the writ of prohibition is
refused.

On the question, whether the State of Alabama can be sued
in chancery, my brothers prefer to remain, and therefore do
remain, uncommitted.